CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
APR 14 2009
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JAMES BROOKS, DONALD HAMLETTE, *and* SAMUEL ST. JOHN,<br>*Plaintiffs*,<br><br>v.<br><br>HOWARD R. ARTHUR, SR., *and* RANDAL W. MITCHELL,<br>*Defendants.* | CIVIL NO. 6:08CV00028-30<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

On September 2, 2008, Plaintiffs James Brooks, Donald Hamlette, and Samuel St. John, all former employees of the Virginia Department of Corrections' Rustburg Correctional Unit in Rustburg, Virginia, brought suit against their former supervisors at the Rustburg Unit, Defendants Howard Arthur, Sr. and Randal Mitchell, for alleged acts of retaliation in violation of 42 U.S.C. § 1983 and for tortious interference with contract. On March 23, 2009, the Defendants filed Motions to Dismiss, arguing that the Plaintiffs' § 1983 claims are precluded by decisions rendered in state grievance hearings with the Virginia Department of Employment Dispute Resolution. Because the § 1983 claims are barred by the doctrine of res judicata, and because I decline to exercise supplemental jurisdiction over the remaining state law claims, the Defendants' Motion will be granted in a separate Order to follow.

I. BACKGROUND

In March 2006, Brooks, a senior corrections officer at the Rustburg Unit, met with the Equal Employment Opportunity ("EEO") office of the Virginia Department of Corrections to complain of retaliation, discrimination, and harassment directed at him by Arthur. The next month, Hamlette, the only African-American lieutenant at the Rustburg Unit at the time, also

filed a complaint with the EEO office alleging that Arthur and Mitchell committed racial and religious discrimination against him. Hamlette's complaint alleged that he was being treated unfairly and differently than other white lieutenants at the Rustburg Unit. For example, Hamlette complained that Arthur and Mitchell repeatedly dropped disciplinary charges he filed against inmates who used profanity or otherwise disrespected him and refused to tell him about supervisory personnel meetings, which the other lieutenants were all made aware of. Brooks and St. John were both listed as witnesses on Hamlette's complaint. Hamlette also complained that he was being treated differently than the other lieutenants because he was a minister and believed in the importance of upholding high moral standards in the workplace.

In May 2006, after he found out about the complaints to the EEO office, Arthur allegedly upbraided Brooks for violating the "chain of command" by consulting the Department of Corrections before coming to him first. Around that same time, another lieutenant in the Unit allegedly warned Brooks that he had "opened up a beehive" by complaining to the EEO office and that he had better "call off the dogs" if he wanted to move from the night shift to the day shift. Nevertheless, the EEO investigation proceeded. Around July 25, 2006, an EEO investigator requested written responses to Hamlette's allegations from Arthur and Mitchell by August 2, 2006. A few weeks later, the investigator sent numerous letters to the witnesses Hamlette listed in his complaint. Although the letters were marked "confidential," they were allegedly place in open Unit mailboxes, for every Unit employee – including the Defendants – to see. Responses to the investigator's letters were due by August 31, 2006. Arthur, however, allegedly preempted the investigation by issuing Group III disciplinary notices to Brooks, Hamlette, and St. John on August 30, 2006.[1] The notices stated that Brooks and St. John, both of

---

[1] Disciplinary offenses are divided up into three categories, based on seriousness. Group III offenses are the most serious and "include acts and behavior of such a serious nature that a first occurrence normally should warrant

whom were supervised by Hamlette, failed to conduct inmate counts in accordance with the Unit's official procedures and also falsified some inmate count sheets. Hamlette's Group III notice accused him of failing to properly supervise Brooks and St. John and of failing to follow his supervisor's instructions. All three of the Plaintiffs were terminated shortly after the notices were issued.

In response to what they thought were bogus disciplinary notices and pretextual terminations, each of the Plaintiffs filed formal grievances with the state Department of Employment Dispute Resolution ("EDR"). On January 18 and 19, 2007, grievance hearings were held before a designated EDR hearing officer. While the hearing officer upheld the Group III notices and terminations of Brooks and St. John, he ordered the Department of Corrections to reinstate Hamlette's employment and reduce his offense level to Group II. Hamlette was awarded back pay less a ten-day work suspension and any interim earnings he received during his period of removal. The hearing officer also addressed the question of whether Hamlette was retaliated against by the Defendants for filing a discrimination complaint with the EEO office. The hearing officer held that while Hamlette had engaged in a protected activity by filing the EEO complaint and suffered a materially adverse action because of his termination, he was not entitled to relief for retaliation because he could not establish a connection between the protected activity and the adverse action. Hamlette did not exercise his right to appeal the final EDR decision.

Brooks and St. John, on the other hand, appealed the hearing officer's decision upholding their Group III notices to the Circuit Court for Campbell County. On August 2, 2007, the court

---

removal." Group II offenses "include acts and behavior that are more severe in nature and are such that an accumulation of two Group II offenses normally should warrant removal." Group I offenses "include types of behavior less severe in nature, but [which] require correction in the interest of maintaining a productive and well-managed work force." Va. Dep't of Corrections, Operating Procedure 135.1 (X) -- (XII).

issued two separate orders vacating the hearing officer's decisions on the grounds that they: (1) improperly concluded that the count sheets at issue were official state documents for purposes of applying Virginia Department of Corrections Operating Procedure 135.1(XII)(B)(2), and (2) erroneously applied the definition of "falsify" to Brooks' and St. John's actions. After the grievances were remanded, the EDR hearing officer found lesser Group II violations, and Brooks and St. John were reinstated with the Department of Corrections and given back pay less a ten-day work suspension and less any interim earnings that they received during their periods of removal. As with his decision in the Hamlette grievance, the hearing officer found that neither Brooks nor St. John was retaliated against by the Defendants for engaging in protected activity because there was no causal connection between the activity and their terminations. No further appeals were taken by Brooks or St. John.

In all three of the EDR hearings, the Plaintiffs were advised in writing in both the hearing officer's opinions and the Grievance Procedure Manual that they could request that the Director of EDR review a hearing decision if they believed the decision did not comply with the applicable state grievance procedure. Although none of the Plaintiffs further challenged the fairness or propriety of the EDR hearing decisions within the state system, they now complain that Arthur and Mitchell tried to interfere with the grievance process by discouraging other officers and witnesses from attending the hearings and reiterate the claims that their terminations were in retaliation for their participation in protected civil rights activity. The Plaintiffs seek, among other things: a declaratory judgment that the Defendants violated the Plaintiff's First Amendment rights secured by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, § 1983, and the laws of Virginia; compensatory damages for loss of salary and other associated employment benefits, humiliation, damage to reputation, mental and emotional distress, and pain and suffering; and punitive damages. The Defendants argue that the Plaintiffs'

§ 1983 claims should be dismissed on res judicata and collateral estoppel grounds because the EDR hearing officer already issued final, valid judgments on the merits of all relevant issues and claims, including retaliation.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. A plaintiff's complaint must therefore be plausible, not merely conceivable, in order to avoid dismissal. *Id.*

## III. DISCUSSION

### A. EXTRINSIC EVIDENCE

As a threshold matter, there is a procedural dispute as to whether the Court may consider several items of extrinsic evidence without converting the Defendants' Motion into one for summary judgment. While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, a court may consider a document attached to a motion to dismiss if "it was integral to and explicitly relied on in the complaint and the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006). *See also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint).

Among the extrinsic evidence submitted by the Defendants, Hamlette's and Brooks' initial grievance complaints, the decisions of the EDR hearing officer, and the Campbell County circuit court orders were all integral to and referenced by the Plaintiffs' complaints.[2] Those exhibits, along with the portions of the EDR Grievance Procedure Manual and Rules for Conducting Grievance Hearings and the U.S. Equal Employment Opportunity Commission's "Acknowledgement of Settlement" between Hamlette and the Department of Corrections, are also public documents and records, which a court is free to consider on a motion to dismiss. *See Briggs v. Newberry Cty. School Dist.*, 838 F. Supp. 232, 234 (D. S.C. 1992) (internal citations omitted) ("Facts subject to judicial notice may be considered by a court on a motion to dismiss.

When entertaining a motion to dismiss on the ground of res judicata or collateral estoppel, a court may judicially notice facts from a prior judicial proceeding."). For these reasons, and also because the Plaintiffs do not dispute the authenticity of any of the extrinsic evidence, it is not necessary to convert the Motion to Dismiss into one for summary judgment.

## B. RES JUDICATA

A federal court must give a state court judgment the same preclusive effect that the judgment would be given under the law of the state in which it was rendered. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Rao v. County of Fairfax*, 108 F.3d 42, 44 (4th Cir. 1997). Additionally, "[w]hen a state agency 'acting in a judicial capacity...resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) (footnote omitted)). By giving preclusive effect to administrative fact-finding, federal courts promote "both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources." *University of Tennessee*, 478 U.S. at 798. Here, the parties do not dispute the fact that Virginia law of res judicata and collateral estoppel governs the Plaintiffs' claims. The grievances were resolved by an EDR hearing officer who acted in a judicial capacity, resolved the disputed issues of fact before him, and provided an adequate opportunity to litigate those issues. Accordingly, the hearing officer's decisions may be entitled to preclusive effect to the extent that Virginia's substantive requirements for res judicata or collateral estoppel are met.

In Virginia, the doctrine of res judicata "precludes relitigation of the same cause of action, or any part thereof, which could have been litigated between the same parties and their

---

[2] *See, e.g.*, Brooks' Am. Comp., ¶¶ 1, 2, 12, 18, 27, 31,

privies." *Smith v. Ware*, 244 Va. 374, 376 (Va. 1992). Rule 1:6 of the Rules of the Supreme Court of Virginia states the requirements for the application of res judicata in more detail:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a). Based on these requirements, a party wishing to raise res judicata as an affirmative defense must establish: identity of the remedies sought, identity of the cause of action, identity of the parties, and identity of the quality of the persons for or against whom the claim is made. *State Water Control Bd. v. Smithfield Foods, Inc.*, 261 Va. 209, 214 (Va. 2001). The party asserting the defense must also show that the judgment in the former action is final and rendered on the merits by a court of competent jurisdiction. *Simmons v. Commonwealth*, 252 Va. 118, 120 (Va. 1996). When applying res judicata, "a cause of action may be defined broadly as an assertion of particular legal rights which have risen out of a definable factual transaction." *Allstar Towing, Inc. v. City of Alexandria*, 231 Va. 421, 344 S.E.2d 903, 905-06 (Va. 1986) (internal quotations omitted).

The Defendants argue that res judicata bars the Plaintiffs' § 1983 claims because those claims arose out of the same series of transactions that gave rise to the initial retaliation complaints, involve the same privies, and were resolved in final decisions issued by the EDR hearing officer. In response, the Plaintiffs contend that their federal claims do not arise out of the same series of transactions because the initial allegations of retaliation concerned the discrete act of termination but did not include the acts of retaliation that occurred later, such as the Defendants' alleged interference with witnesses at the grievance hearings. The Plaintiffs also

claim that there is no privity between the Defendants and the Department of Corrections because the Defendants are sued in their individual, rather than official, capacities.

1. Identity of Parties: Privity

In Virginia, privity is a case-specific concept and "is determined in a case by case examination of the relationship and interests of the parties." *State Water Control Bd. v. Smithfield Foods, Inc.*, 261 Va. 209, 214 (Va. 2001) (citations omitted). "The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." *Id.* Although the Plaintiffs' grievance proceedings were brought against the Department of Corrections, the interests of the Department, Arthur, and Mitchell in the grievance proceedings and this action are effectively the same. Each has or had a strong interest in the efficient and effective operation of the Rustburg Unit, and in the legitimacy and finality of disciplinary and management decisions. All of the allegations lodged against the Defendants also arose out of their actions as supervisors employed by the Commonwealth, which may only act through its employees or its agencies. *See, e.g., Whitley v. Commonwealth*, 260 Va. 482, 491 (Va. 2000). Furthermore, the Department's interest in defending against the Plaintiffs' grievances was identical to the individual Defendants' interest in this action: proving, by a preponderance of the evidence, that the discipline issued was warranted and not a result of the Plaintiffs engaging in protected civil rights activity.

In support of their privity argument, the Plaintiffs rely primarily on *Andrews v. Daw*, where the Fourth Circuit held that "a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata." 201 F.3d 521, 526 (4th Cir. 2000). In that case, a North Carolina district court had dismissed, on Eleventh Amendment grounds, the plaintiff's § 1983 claim against a police officer who was sued in his official

capacity. *Id.* at 523. When the plaintiff sued the officer for a second time in his individual capacity, the district court dismissed the action on res judicata grounds. *Id.* The Fourth Circuit reversed the district court's dismissal of the second suit, relying on the "differing capacities rule," which requires that "'[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.'" *Id.* at 525 (quoting Restatement (Second) of Judgments § 36(2) (1982)). The Plaintiffs argue that, because the grievance proceedings against the Department of Corrections were akin to official capacity suits against the Defendants, *Daw* prohibits the application of res judicata and collateral estoppel to claims against the Defendants in their individual capacities.

*Daw*, however, is inapposite on the issue of privity in this case. In *Daw*, the district court dismissed the plaintiff's first suit on Eleventh Amendment grounds without reaching the issue of the police officer's personal liability under § 1983. In the first suit, the police officer "merely served as a representative of the government when sued in his official capacity and did not represent 'precisely the same legal right' as he did when sued in his individual capacity." *Id.* at 525-26. In this case, however, the Plaintiffs seek to relitigate the same claims (retaliation) that were addressed in prior proceedings. Furthermore, the state grievance proceedings cannot be easily analogized to official capacity suits. Arthur and Mitchell were obviously not named as individual defendants in their official capacities, and the Department of Corrections either could not or did not assert Eleventh Amendment immunity as a defense. One of the main reasons for the rule espoused in *Daw* was that "different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal capacity action than in an official capacity action." *Id.* at 525. The Plaintiffs have not offered any examples of differing theories of liability or available defenses as between this action and the state grievance

proceedings, nor can they. The burden of proof and the issues to be proved in both sets of actions are the same. This action, unlike *Daw*, does not present a new set of applicable legal theories and defenses. Given such circumstances, and the obvious fact that the Defendants were not sued in their official capacity in the state proceedings, there is little, if any, reason to apply the differing capacities rule to this case.

The Fourth Circuit's recent decision in *Davani v. Clement*, rather than *Daw*, provides the most helpful guidance. In *Davani*, the Fourth Circuit, applying Virginia law, affirmed a district court order giving preclusive effect to a decision rendered by an ALJ in a state grievance proceeding concerning the discharge of an employee of the Virginia Department of Transportation ("VDOT"). 263 Fed. Appx. 296, 297-98 (4th Cir. 2008). The Fourth Circuit held that the ALJ's decision, which concluded that the VDOT employee's discharge was justified under the circumstances and not based on any unlawful discrimination or retaliation, should be given preclusive effect as to VDOT, its Secretary, and the two individual employees responsible for the discharge:

> [T]o permit Davani to maintain the present action would be to allow him to seek the same remedy on the same cause of action that the ALJ decided adversely to him and the Fairfax Circuit Court reviewed and held was not contrary to law. Under Virginia law, Davani may not bring successive suits on the same cause of action where each suit addresses only part of a claim.

*Id.* at 299. The posture of this case is almost identical to *Davani*, and the result should be the same. The Plaintiffs, like Davani, lost in a state grievance proceeding against a state agency. The relevant issues, like the issues in *Davani*, concerned allegedly unlawful discrimination and retaliation. The Plaintiffs now seek, like Davani did, to re-litigate retaliation claims and supplemental state claims in federal court. And the Plaintiffs' claims, like Davani's claim, should be barred by res judicata as to the agency and the agency's individual employees. To permit the Plaintiffs to maintain this action would be to allow them to seek the same remedies on the same

causes of action that the EDR hearing officer decided adversely to them. Given the strong correspondence in interest of the Department and the Defendants and the similarity of this case to *Davani*, I conclude that the privity requirement is met for the purposes of applying the doctrine of res judicata.

## 2. Identity of Causes of Action

The only other ground on which the Plaintiffs dispute the application of res judicata is the identity of the causes of action. Res judicata precludes a party from litigating a claim that arises from the "same conduct, transaction, or occurrence" as a previous claim that was resolved by a final judgment on the merits, regardless of "whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit." Va. Sup. Ct. R. 1:6; *see also Flora, Flora & Montague, Inc. v. Saunders*, 235 Va. 306, 310 (Va. 1988). As explained above, for the purpose of applying res judicata, "a cause of action may be defined *broadly* as an assertion of particular legal rights which have risen out of a definable factual transaction." *Allstar Towing*, 231 Va. at 425 (emphasis added).

The Plaintiffs claim, erroneously, that "the causes of action raised in this litigation could never have been raised against either the Agency or the individual defendants as part of the grievance process." In fact, Count I of the amended complaints, which is premised upon the acts of termination, was raised against the Department in the grievance proceedings and therefore cannot be raised in this action. And although Count II of the amended complaints, which is premised upon the Defendants' alleged interference with the Plaintiffs' witnesses at the grievance hearings, was not litigated during the grievance hearings, it could have been. The alleged acts of interference arose from the same transaction – the termination of the Plaintiffs – that was the basis of the dispute in the grievance hearings. The alleged acts also occurred before any final decisions were rendered and thus could have easily been brought to the attention of an

EDR hearing officer, the Director of EDR, or the Director of the Department of Human Resources Management. *See* Va. Code Ann. § 2.2-3004 (providing state employees with the right to bring a grievance proceeding for alleged "acts of retaliation as the result of the use of or participation in the grievance procedure."); *see also* Va. Dep't of Employment Dispute Resolution, Grievance Procedure Manual, § 7.2(a). In *Keith v. Aldridge*, the Fourth Circuit expressly denied a litigant's attempt to accomplish the same form of claim-splitting that the Plaintiffs attempt here. 900 F.2d 736 (4th Cir. 1990). In that case, Keith, a former Air Force employee, initially brought Title VII and Privacy Act claims against the Air Force after his employment was terminated. *Id.* at 737. After that action was settled and dismissed with prejudice by the district court, Keith filed a second action, alleging that the Air Force's failure to provide him with certain personnel notes prevented him from raising effective defenses during his termination proceedings, thereby violating his due process rights. *Id.* at 739. The district court held that the second action was barred by res judicata, and the Fourth Circuit affirmed, concluding that the two causes of action were identical because the second claim arose out of the same transaction as the first claim. *Id.* at 740. In reaching that conclusion, the Fourth Circuit expressly rejected Keith's argument that the second action was not the same because it concerned only the conduct of his administrative hearing and its consistency with due process requirements. *Id.* Here, the Plaintiffs, like Keith, cannot now bring a subsequent action against the same parties on the basis of interference with their grievance proceedings. Nothing alleged in the amended complaints occurred after the grievance proceedings closed, and the belated allegations of interference should have and could have been brought to the attention of the EDR hearing officer or the Director of EDR. Because the claims that the Plaintiffs seek to litigate arose from the same transactions as the claims they already litigated in the grievance proceedings, I conclude that the identity of causes of action requirement is met.

### 3. Final Judgment on the Merits

The Plaintiffs do not contest the Defendants' contention that the ultimate decisions of the EDR hearing officer were final, valid judgments on the merits. Decisions rendered in employee grievance hearings, if not appealed, may be treated equivalent to final judgments in state proceedings. *See, e.g., Davani*, 263 Fed. Appx. at 297; *Layne v. Campbell County Dep't of Social Servs.*, 939 F.2d 217, 219-21 (4th Cir. 1991) (administrative fact-finding can have issue preclusive effect on § 1983 claim). Hamlette never appealed the initial decision of the EDR hearing officer. St. John and Brooks, after initially appealing the hearing officer's decision to a circuit court, accepted the second and final determination by the hearing officer without further appeal. As such, the hearing officer's decisions should be treated as final judgments on the merits and be given preclusive effect.

Because the Plaintiffs' § 1983 claims arise from the same transactions as the retaliation claims that were resolved in final, valid judgments on the merits before the EDR hearing officer, and because the Defendants are in privity with the Department of Corrections, Counts I and II of the amended complaints are barred by the doctrine of res judicata and will be dismissed.[3]

### C. TORTIOUS INTERFERENCE

When a district court dismisses all federal claims prior to trial, it may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting that district courts enjoy "wide latitude" in determining whether or not to retain jurisdiction). Furthermore, the balance of factors to be considered – judicial economy, convenience, fairness, and comity – usually weigh in favor of declining to exercise jurisdiction over any remaining state law claims. *Carnegie-Mellon Univ. v.*

---

[3] Because Counts I and II of the amended complaints are barred by res judicata, I will not reach the question of whether the issues raised in those Counts are also barred from being litigated by collateral estoppel.

*Cohill*, 484 U.S. 343, 350 n.7 (1988). In a case where "state issues substantially predominate, whether in terms of proof, the scope of the issues raised, or of the comprehensiveness of the remedy sought," the balance of factors will favor a decision to relinquish jurisdiction. *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because the Plaintiffs' federal claims should be dismissed on res judicata grounds and because the tortious interference claims involve substantial state law issues, I will decline to exercise supplemental jurisdiction over the tortious interference claims. Count III will be dismissed without prejudice.

## IV. CONCLUSION

Because the Plaintiffs' § 1983 claims arise from the same transactions as the retaliation claims that were resolved in final, valid judgments on the merits before the EDR hearing officer, and because the Defendants are in privity with the Department of Corrections, Counts I and II of the amended complaints are barred by the doctrine of res judicata and should be dismissed. The Plaintiffs voluntarily chose to submit their claims to the offices of the Commonwealth of Virginia, and having done so, are bound by both the results and the attendant consequences. *See Davani*, 263 Fed. Appx. at 299 (reaching same result under similar facts). I decline to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claims. The Defendants' Motion to Dismiss will be granted in a separate Order to follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 14th day of April, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE